Frank SMOKER, Petitioner,

v.

Harry E. RUSSELL, Superintendent, State Correctional Institution, Huntingdon, Pennsylvania, Respondent.

No. 467.

United States District Court
M. D. Pennsylvania.

June 27, 1963.

Frank Smoker, pro se.

W. Thomas Malcolm, Dist. Atty., Indiana County, Indiana, Pa., for respondent.

FOLLMER, District Judge.

Frank Smoker, a State prisoner at the State Correctional Institution, Huntingdon, Pennsylvania, filed a Petition for Writ of Habeas Corpus presenting the issue of whether he was denied the right of a speedy trial, with respect to the final disposition and sentence, under the due process clause of the Fourteenth Amendment of the Constitution of the United States.

The sentence he is presently serving was imposed in Indiana County, Pennsylvania, on October 18, 1960, on three indictments charging burglary, larceny and receiving stolen goods. He was sentenced for a term of two to five years on each indictment to run concurrently with each other but to begin at the expiration of a Clearfield County sentence. The plea of guilty upon which the Indiana County sentence was predicated was entered on December 24, 1956.

The sequence of sentences is as follows: Smoker was sentenced in Westmoreland County, Pennsylvania, on December 18, 1956, to an indeterminate to six year sentence. He was taken to Indiana County, Pennsylvania, and there entered a plea of guilty on December 24, 1956, as above stated. He was taken to Clearfield County, Pennsylvania, in February 1957 and there pleaded guilty and was sentenced on February 9, 1957 to an indefinite sentence to run concurrently with the Westmoreland County sentence of December 18, 1956. On February 10, 1957 he escaped from the Clearfield County Jail and after being apprehended, was sentenced in Clearfield County on February 20, 1957 to two and one-half to ten years for prison breach, aggravated assault and battery and larceny of two automobiles. Then on May 29, 1957, he was sentenced in Allegheny County on charges of burglary, larceny and receiving stolen goods, to a term of two and one-half to ten years to run concurrently with the two and one-half to ten year Clearfield County sentence. On March 1, 1960, he was paroled on the December 18, 1956, Westmoreland County sentence and started serving the concurrent two and one-half to ten year sentences of Clearfield County and Allegheny County, as well as a one to two year concurrent sentence which had been imposed in Westmoreland County.[1] Having been paroled on September 1, 1962, on the concurrent Clearfield County, Allegheny County and Westmoreland County sentences, he began the service of the two to five year Indiana County sentence now before us.

As stated in 39 C.J.S. Habeas Corpus § 13, page 441, "The right of a person to the writ of habeas corpus depends on the legality or illegality of his detention, and this in turn depends on whether the fundamental requirements of law have been complied with, and not at all on the guilt or innocence of the prisoner, or the justice or injustice of his detention on the merits."

The sole question before us is whether Smoker was deprived of a constitutional right in the imposition of the Indiana County sentence.

Smoker was sentenced in Indiana County almost three years and ten months after the plea was entered. No valid reason has been assigned for the delay. He was sentenced on other offenses in other counties, and on subsequent offenses after the entry of his plea in Indiana County. There was a detainer against him during this entire period. He alleges that he has exhausted his State remedies and this has not been denied.

Smoker alleges that in 1957, after all the other charges against him had been disposed of by sentence, he requested in writing, of the Judge in Indiana County,[2]

---

1. Whether any of these sentences was after trial or on pleas of guilty does not appear in the records before this Court.

2. The same Judge presided at the arraignment in 1956 and the imposition of sentence in 1960.

that he be sentenced on the plea entered and "dispose of the detainer which is against me." He alleges that in 1958 he wrote to the District Attorney and the Clerk of Court. He further alleges that in 1959, "receiving no satisfaction from the court in Indiana County", he appealed to the Staff at the State Correctional Institution at Pittsburgh, Pennsylvania, asking assistance "in disposing of the Indiana County detainer" and that "the record officer of said institution wrote a letter to the Indiana County Court informing them of Petitioner's request for final disposition," and that "six months later after receiving no information from the Indiana County Court" he "again sought the aid of the Staff at the Pittsburgh institution" and "again the record officer informed the Indiana County Court of his request."[3]

Neither the County Judge, the former District Attorney,[4] or the Clerk of Court testified orally or by deposition or sought to submit affidavits[5] bearing upon or negativing any of petitioner's statements, nor were the records or any witnesses from the Correctional Institution produced in contradiction of petitioner's allegations.

At the time the plea was entered in 1956, Smoker was represented by an attorney. As to this counsel for the Respondent stated, "I think the most important thing and the most difficult thing for this young man to overcome at this present time is that when he came to Indiana County in 1956 he had counsel of his own choosing. There is no record that counsel ever withdrew. There is no record that the counsel ever requested that he be brought back there, and this man in his own papers says that Paul McCormick lived a few years after the plea." Smoker testified, "I lost touch with my attorney after I was committed to the penitentiary. * * * There

were two of us, and he was mainly representing my co-defendant. In other words, I don't know how to explain it, but he wasn't really my counsel. He had his brother appear in court for me in Westmoreland County, but he himself represented the co-defendant—In Indiana County I imagined he represented me but his brother didn't show up who was supposed to be representing me. So I had had no funds. I had no call on him, and he said that whenever he would bring the matter up himself—Now, anyway, I lost touch with him because I relied on him but I don't know how long he lived after that * * *." He stated that he believed it was around two years after the plea. One could hardly expect an indigent prisoner to be more accurate, but the exact date of death of this member of the Bar, if material, could easily have been ascertained by Respondent. Smoker's testimony is consistent with his assertions as to personal letters requesting disposition of the pending proceeding, and his obtaining the aid of the Correctional Institution in making further requests. Certainly deceased counsel cannot be visited with the onus of any dereliction by authorities after his death. This Court did not have the benefit of the record of what transpired either at time of plea or of sentence. It is conceded, however, that when before the Court for sentence "he at that time stated that the judge could not sentence him, could not pronounce sentence because the matter was too old."[6]

Smoker alleges that the "undisposed of charges in Indiana County prevented his consideration for transfer to Rockview, a minimum security institution, and necessitated his incarceration at the Western State Penitentiary, a maximum security institution"; that "the said undisposed of charges prevented petitioner's consideration for jobs at the said peniten-

---

3. There is some evidence that this last referred to letter was on or about January 19, 1960.

4. The statement of the present District Attorney should be noted, that he had petitioner brought to Indiana County

within a month or so after he became aware of the situation.

5. See 28 U.S.C. § 2246.

6. What notice was taken of this contention does not appear. Apparently it was merely brushed aside.

# 902

tiary outside the walls and in reduced security positions and areas inside the institution"; that "the policy of the Pennsylvania Parole Board is to take into consideration the institution to which an inmate is assigned, the security factor involved in the job he holds, and the gage of his rehabilitation is his transfer to a position or institution of less security, and his advancement to a job of greater trust"; that "On July 24, 1958, while these charges remained undisposed of the board refused parole to petitioner"; that "the same factors [previously stated] are considered by the Pennsylvania Board of Pardons in making their decisions in commutation"; that "In June 1959 while petitioner was still held in maximum security and the Indiana County charges remained undisposed of, petitioner's commutation request was denied", and that "the undisposed of charges in Indiana County also affected petitioner in a personal way, causing him an emotional upset."

We recognize that these contentions are lifted, almost verbatim, from the opinion of Judge McIlvaine in United States ex rel. Giovengo v. Maroney, D.C. W.D.Pa., 194 F.Supp. 154 (1961), but here, as in the Giovengo case, supra, they were neither denied, countered nor met by anything to the contrary,[7] although clearly within the knowledge of the respective Commonwealth agencies. The facts in the present case are very similar to those in the case of United States ex rel. Giovengo v. Maroney, supra, except that the lapse of time there was a few days less than three years, whereas here it was a few days less than three years and ten months.

Under the situation as presented in this case I conclude that no proper reasons have been presented to justify the delay, and that the deferment of the sentence following the entry of a guilty plea in the State Court for a period of almost three years and ten months, in the face of repeated requests for final disposition of the case, deprived the petitioner,

Frank Smoker, of due process of law as guaranteed by the Fourteenth Amendment of the Constitution of the United States in that in spite of repeated requests, a speedy trial was denied him and that this has been prejudicial to his rights. The problems involved and the law in relation thereto received full and able discussion by Judge McIlvaine in United States ex rel. Giovengo v. Maroney, supra, and I am in full accord therewith. No purpose would be served by repeating them here.

The foregoing Opinion is intended to be considered as the Findings of Fact and Conclusions of Law of this Court.

Order discharging the petitioner will be entered.

---

7. This Court, of course, takes a dim view, after the hearing in this case, of the allegation of emotional distress.